Please be seated. Thank you. Will the clerk please call the next case? 2220522 MaryWorks Warrenville, LLC, appellant by Robert Minitz, v. Illinois Department of Agriculture and Jerry Costello, Director, Adelaide, by Richard Huska. Mr. Minitz? Minitz, I have 60 minutes and a minute. Okay, very good. Now, I know you'll notice that we're in a hybrid situation, so two justices are physically present and remote. We have our third justice, Justice Brennan, so try not to ignore him, if you will, during your... I will try very hard not to ignore anyone, Judge. Thank you. So, good morning. My name is Bob Minitz. If it pleases the court, counsel, I'm proud to represent the plaintiff, appellant MaryWorks, and we're here on our appeal from the affirmance of the department's decision to deny us an infusion license. An infusion license is the ability to infuse cannabis into marshmallows, cookies, and other such things. That's really what we're talking about this morning. I think the analysis should probably start out with the statute or the regulation. Eight, Illinois Administrative Code 1-300-415-A states that the top-scoring applicants, as determined by 1,300.407, that receive at least 75% of available points will be issued infuser licenses by the department. So we received 964 out of 12,000, so we received 96%. Based upon this scoring, we should have been given a license. The reasons for the denial are unclear, and that's why we're before the court today. It seems that my client, MaryWorks, was denied a license because, in the state's opinion, MaryWorks did not specifically describe six lower-level positions during the application process. Now, it's important, in my opinion, to note that the application was 1,047 pages and supplemented with another 60 pages. But we're here about six low-level positions. The trial court issued two opinions. In the first opinion, they went through the facts of the case and remanded the adverse decision back to the department. And in the second decision, which is the basis of this appeal, they ruled against my client. The trial court, and this is Appendix 9-11, noted that in a brief filed in the case, that is, a brief filed in the trial court, quote, the department, for the first time, asserts with actual specificity the purported basis for its decision disqualifying MaryWorks' application. This is very, very important. And the reason it's important is if the state had taken the time to say, MaryWorks, give us six job descriptions, MaryWorks would have given them six job descriptions. MaryWorks paid a lot of money to do this application. MaryWorks worked very hard to try to get this license. If they had been given the opportunity to give six job descriptions, there is no question that that's what they would have done. Now, apparently, MaryWorks was disqualified for not giving the following job descriptions. Production Associate, Packaging Associate, Marketing Associate, Sales Associates, Accounting Associates, and Human Resources Specialist. However, those reasons are insufficient, and for at least four reasons. First, as I previously said, we scored 96%, and we were entitled to the license. Second, MaryWorks substantially complied with the requirements. That's why they had to do an application over 1,000. And contrary to counsel's argument, perfection is not required. Substantial compliance is the rule of law. Next, the department, to this day, has never articulated a reason why these job descriptions are important. However, any relevance to the investigation they would have undertaken to see if my client is or is not entitled to an infusion license. Does the department not have the right to determine what the guidelines are for issuing these licenses? In accordance with the regulations and the statute. That's why I start off my argument with the regulations. They certainly have a degree of discretion, but it's not arbitrary and capricious, and it's not unilateral. We've got to follow the law. They've got to follow the law. And our position is not complex. Our position is simple. We follow the law. The department did not follow the law. Could you, before you go on, tell me what allows you to do substantial compliance? Well, I cite a series of cases. Mainly they were election law cases and DUI cases that talk about where there are typos, or where there's a missing page, or whether it's not a notarization, or there's something like that that doesn't disqualify an application or any other document filed in any other court system. The idea that you have to have perfection is a very slippery slope. I mean, the department cannot act arbitrarily and capriciously. So they can't say, well, Mr. Minutes, you spelled your name wrong. Mr. Minutes, your notary had expired. Mr. Minutes, page 26, which should have been between page 25 and 27, shouldn't be there. They cannot act arbitrarily and capriciously. And what's very important in this case... Can I ask a question? Of course. So, on June 1st, Mary Worst gets notification from the department saying, listen, you forgot to give us the descriptions. We want the descriptions. You didn't give them all the descriptions. Why now? And this goes to the arbitrariness. They specifically told you what was missing, what they wanted, and it doesn't seem like you complied. Your Honor, that's not how I read the record. I read the record... How do you read the record? If I may explain. The June 1 notice says there are these possible deficiencies. They don't say, give us these six specific items. That's why the judge, in his very first opinion, said what he said, which is... So my notes, maybe they're wrong, and I'll go back and check the record. My notes have in quotes, applicant's organizational chart must include position descriptions. Was that not part of the June 1 correspondence to Mary Worst? I will also check my records. I'm relying upon what the judge said. And my recollection, which is the first time we got position descriptions requested, was in the trial court level following Appeal No. 1. And that's why I quote that sentence from the judge's opinion. It's also important, and Judge, I think you hit the nail on the head with the question. When this case was remanded to the state, all they had to say... So it's remanded to the state on May 2, 2022. All they had to say is, Mary Worst, describe six positions, six low-level positions. And we would have done it. But what did they do? In 15 days, they simply say, here is our administrative decision on remand. We're not allowing you the license. They never gave us the true opportunity to describe these six positions. And as I said before, I think we did describe these six positions. I mean, the state's not stupid. I mean, they know that a production associate is an associate in the production department. I mean, they know what a packaging associate is. Even I know what a packaging associate is. And I don't know anything about cannabis whatsoever until I got involved in this case. They know what a marketing associate is. They know what a sales associate is. They know what an accounting associate is. So what do they... But don't they want what the position is, the description of the position, the names and resumes of persons holding each position, to the extent that those positions have been filled, right? That's the language in the code. That is the language in the code. And was the application, did it have all of those things? The application is not required to give the names of people holding positions if there are no names of people holding positions. So for these six, there were nobody holding the position. So the state says, even though there was nobody holding the position, you need a better description than production associates, which is how we describe the position. And I say, maybe a little tug-of-the-cheek, we all know a production associate is somebody who's an associate in the production department. And the state knows this. The state's the expert of the cannabis business. And this is an 1100-page application. Well, we're just focusing your appeals dealing with one section of the code. So let's stay with that. So if... Oh, I'm sorry. Go ahead. If somebody says to us, describe Mr. Mendez, we aren't describing you if we say what your name is. A description is different from a name. And the name is all that you gave them. We gave them only the title for these six minor positions. And, for example, there are other positions, like the CEO, you know, the higher-level positions. They had no complaint about those descriptions. They just focused on the minutiae. These six positions, which, as I said, I believe we adequately described. But if we didn't, there has to be a reason why they needed this information in this context. And they've been unable to ever provide us with any such reason. I think I'm reading the light right now. Yeah, it's great. It's great. I just... I also think we need to put this in context. Because I think this is a classic case where it's very important for the judiciary to act. So you have a situation where the legislation came out has first introduced cannabis. And we can all recall when it was completely illegal. And then it was fine for recreational. And then it was fine for medical. And the legislature passes the legislation and says to the state, in this case the department, we now want you to fulfill our intent. We want you to do what needs to be done. You have to license dispensaries. You have to license cultivation centers. You have to license infusion centers. Please go do your job. What happened in this case is the state acted inconsistently with the legislative pronouncement that they should do their job, that they should give infusion licenses to the people who score over 75%. Infusion people should be out there as should be dispensary people, as should be cultivation people. That's what the state is supposed to be doing. And they're not. That's why we're asking the judiciary to step in. I don't mean to be repetitious, but I need to say one more time. If they had simply said, especially when the case was remanded after that first decision, Mayor Works, give us six sentences or six paragraphs with six job descriptions, we would have done it. But they didn't, as the judge indicated in his first opinion. That's all they had to do. And we wouldn't be here. We would have an infusion license. It's a complete mystery why they didn't do that. It's a complete mystery why they didn't give us this infusion license. Maybe counsel can answer that question. Maybe he can't. I certainly have not seen an answer to that question. Bottom line, Your Honor, is we're asking that the decision be reversed, that the department order to give us the infusion license, or the alternative case be remanded for further relief. Further questions? Further questions? No, thank you. Okay, you'll have five minutes in reply. Thank you, I appreciate it. Counsel, you may respond. Thank you. May it please the court, I'm Assistant Attorney General Richard Huzak, counsel for the Department of Agriculture in this case. And I urge the court to affirm the department's decision denying this party's application for an infuser license. The ground they gave was that the application did not include position descriptions for all of the positions on the applicant's organizational chart. That was what the department's rules required. The statute said that an applicant must provide all the information required by rule. And the statute goes on to say, specifically, that if there's an omission or deficiency, the department can give you a second chance to cure that deficiency. The department did exactly that. And Justice Brennan's question is exactly correct. That at page 1497 of the record, the department listed the elements of the application relating to the organizational chart. And it specifically identified as a deficiency that the chart did not include position descriptions. That was clearly identified as the reason for the deficiency. It was the applicant had an opportunity to cure that. And the statute then says, section 3510, then says, you get a second chance, you don't get a third chance. It says that if after the opportunity to cure this omission, your application is still incomplete, it will be disqualified. The department did not have discretion to say, oh, we'll give you a third chance. The statute said, if after a chance to cure, they still didn't complete it, then the application will not be scored and will be disqualified. And I think that's the nub of this case. But also, what is a position description? That's a factual question. And I think the rule clearly means that it's more than just a job title. And on that, I think it's sort of a common sense... Or does it say that? It doesn't. I think the plain meaning of position description is different than job title. If you say CEO, that doesn't really tell you what the position is going to do. If you say CFO, you have some general sense that they're going to be involved in financial management. So you're saying there's a clear demarcation between a title and what the title of the position versus what that description or title, what are the activities there? Yes, and there's a clear conceptual difference. I don't know that there's a bright line definition that you could apply that you provide a description as opposed to a title. Well, no, it's duties and authority. I think that's a fairly good definition of position description. And again, I think that to the... So you're saying that if you accept that as a good description or a good definition, that everybody plainly knows that? No, I'm saying the department reasonably interpreted its own rule in that fashion. And if the court concludes that its interpretation of its own rule is unreasonable as a matter of law and that a mere job title as a matter of law qualifies as a position description, then the court may decide to reverse. But I think that the plain... The common understanding of the term position description entails more than just saying, well, that's our CEO or that's our CFO or that's our HR person. And you came up with this. I mean, this is an agency definition action, right? Not legislative. Correct. Okay. Well, what's the reason for that? I think the reason was that this is formally an activity that was criminal. There's the danger of people trying to divert product to minors. They need to know who's going to be running the business first in terms of what the organization is for the various responsibilities. This isn't some area in which sort of a backhand, half-hearted effort is going to be sufficient. The department is charged with a... I have this question, but you also throw in this language of, well, we've got to have position descriptions, but we don't want the names and the resumes of the persons holding each position to the extent those positions have been filled. Now, in this case, were all positions filled? Not at the time of the application. I don't know. Maybe you can answer me this question. Sure. So let's say Mary Works goes out and hires someone for a position that wasn't at the time of the application filled. Correct. What does Mary Works do thereafter? As I stand here now, I don't precisely know the answer to that, but I believe the rules also require that applicants supplement their applications with information later about principal officers and employees so that the department can vet them to make sure that they don't have felony convictions, that there's not some background check problem. This is an application to get a license? Correct. Okay. So let's say that license is approved. Correct. Okay. Can Mary Works begin production or operations or services? I believe if their license is granted and their facility has been inspected and meets the requirements. What about if the positions are not filled? Do they thereafter, though they're in full operation, and they fill the position, are they required within so many days to say, we've got Joe Bloch here? This was not an issue that was focused on, and so I have to say I don't off the top of my head. The reason I'm going through that is it's a highly regulated industry. Yes. I agree with you that it's subject to criminal activity. Absolutely. I'm just wondering how diligent this Department of Ag is on this. I think they take their job very seriously, and as people are identified for filling positions on organization charts, their staff investigates their backgrounds. They have authority, I believe, to do criminal background checks. And suspend the license or operations if the person isn't in that capacity. Yes. My understanding, and I've worked with dispensary license, and I've worked with also the grower, infuser, and transporter licenses, so there's some commonalities. But generally, if there is a person that normally would not be acceptable for working in the company, they have a certain authority to take disciplinary action, either suspend activities or direct that the person be excluded from the company. Turning to this case, which positions were improperly or inadequately described? There were six of them that were listed on their amended application, and I do want to emphasize that the applicant did know to provide job descriptions for six of the other positions. So I think they understood what position description meant. But were those positions filled? No. Some of them were filled, some of them were unfilled, which also contradicts the appellant's position that the rule should be interpreted to require position descriptions only for filled positions. And we've addressed, I think, that issue in our brief. The circuit court agreed that the second clause for the providing names and resumes applies only to filled positions. But on page 1525 of the record, their amended application, which lists 12 positions on the organization chart and gives position descriptions for six, does not provide position descriptions for, among other things, human resources specialist, accounting associate, marketing associate, and several others. Those were filled positions? They were not filled positions. Okay. And I think if you read the rule, it's very clear that it means you provide position descriptions for all the positions that you intend to have filled, whether or not they are yet filled, and then as they are filled, send us their names and send us their resumes. And if they're filled before you submit your application, you have to give us their names and resumes at that point in time. I think that... Can I ask a question? Please do, Justice Brent. So the six positions you've referenced, and this gets to the question of substantial compliance. So I guess the question is twofold. Do you agree that substantial compliance might be a possibility here? And then if it is, production associates, I presume that's employees involved in production. What other description would you need? Packaging associates, I presume that's employees that are involved in packaging the materials. What other description would you need? Manufacturing and production supervisor, the supervisor of those doing manufacturing and producing activities. What other description would you need? Marketing associate, those associates employed to help market the product. What other description would you need? Sales associates, associates involved in selling the product. What other description would you need? So if you could, I think you get the time for my question. If you could address that, please. Yes, and actually, it sounds like it's more than two questions. So I'm going to try and break it up and answer all of them. However many questions you think it is, if you could address. And if you think I haven't answered all of them, please let me know. So first, as to substantial compliance, the department's position is that the statute does not make substantial compliance the relevant standard. The statute, Section 35A, specifically says if there is incompleteness after an opportunity to cure efficiency, then the application shall be disqualified. So that is a mandatory standard, not just a substantial compliance standard. And the consequence of noncompliance, of an incomplete application after an opportunity to cure, is disqualification. So maybe there are some statutes where the court can intuit that the legislature intended only substantial compliance. But here, the specific language of the statute precludes that. And essentially says the application must be complete, including, as the statute requires, providing all the information required by rule. And if it isn't, then it's disqualified. So now let's go to the second part, because I don't want you to run out of time. Sure. Which, Justice Breyman, correct me, what are the deficiencies? The deficiencies are the job titles alone are not position descriptions. And so, because this is a heavily regulated industry, it's not enough to say somebody is going to be marketing widgets. These are people that, and remember, that as a matter of federal law, this is still a controlled substance. Let's stop right there. Yes, it's heavily regulated because of potential for criminal non-license. That's all we're talking about here. Non-licensed activity, correct? Certainly. If minors come in, or you're producing product that gets diverted from the... And how are you going to determine whether this is a good dispensary or fuser or whatever? But don't you want the resumes and the names so you can do those background checks? Ultimately, yes. But in the first instance, we want to know that the applicant has taken seriously the various functions that its company is going to be performing. And those functions include making sure that production is done in accordance with procedures that don't permit some type of diversion or sloppy application. The same would be true for the packaging and the marketing. We have a state's attorney in one county that has gone after dispensaries for their marketing because it alleges that they're engaged in deceptive marketing. This is a heavily regulated industry for a reason. And it's not enough to say that, oh, we'll take care of all those things when the time comes. Don't worry too much about the details here. The rules specifically say that if you're going to... So let's take marketing, since we have an example somewhere in the state of Illinois. Okay, marketing function that is being prosecuted, that it's not done properly, apparently, right? Yes, that could be the subject of a disciplinary action later. Okay. What in that description of that marketing position would be necessary to know that the activities of that position are not running afoul of the purpose of the statute? I don't know that the description has to specifically say don't commit any violations of the law, but there are aspects to marketing beyond just the title. The fact that we're going into these illustrations of what that job entails is itself an invitation to provide a description. That you're going to be dealing with other companies, dispensaries, people that supply you with goods that you put the cannabis compounds into, whether they're like candies or gummies or other types of edibles. So our position is that the department's interpretation of its rule as position descriptions requires more than job titles is entitled to deference and is correct as a common sense matter. And as a factual proposition, it cannot be said that it's finding that the position descriptions on the amended application were not provided for these positions is against the manifest weight of the evidence or alternatively clearly erroneous. Finally, if the court concludes that the statute does allow substantial compliance, then a remand would be necessary. I do want to correct one point that my colleague, my opposing counsel made, which is he said when the circuit court remanded, he said you have to provide specificity as to the reasons for the disqualification. I think the circuit court had overlooked the fact that the first deficiency notice said exactly that and the final decision said exactly that. And the remand was not to reopen the record and take additional evidence. The remand was to clarify what the reasons were for this qualification. And the department provided those reasons and the circuit court affirmed under the relevant, its understanding the applicable meaning of the statute, the meaning of the regulation, and the application of the deferential standard for the fact finding by the department. If the court has further questions, I'm glad to answer them. I hope I answered all of Justice Brennan's questions as well as Justice Holdridge's and Justice McDade's questions. I urge the court to affirm the judgment below. Further questions from the court? Justice Brennan? Not to me. Thank you. Thank you, Your Honor. Thank you. Counsel, you may reply. Thank you, Your Honor. Thank you. The issue is we were never given a real opportunity to cure. If you look at the appendix A5, which is the trial court's first opinion, they point out that on June 1, 2021, there was a deficiency notice, there was a response. On August 17, 2021, there was a disqualification notice stating that Mary Works' application had been disqualified. And here's what I think is the important sentence. Rather than identify a specific reason for that decision, that notice stated only that the application had been disqualified for one of four possible reasons, namely and it goes on to state in that decision where he remands it, that doesn't meet the requirements. You've got to tell us what you want, and it's wrong. One of those four possible reasons are the application did not receive the minimum threshold of 75% of the available points to be eligible for licensure. Well, I pointed out we had 95%. They sent us a form letter with no explanation. Let's go to the remand. That remand was supposed to give us an opportunity to cure. But this department decided for some reason, I submit no reason, they were not going to give us that opportunity to cure. So all they, that decision, I think it's called final administrative decision, basically rubber-stamped their prior decision, which is, you know, we've been disqualifying you for June 1, and we're not going to give you an opportunity to cure. Counsel specifically said that under his reading of the law, we are entitled to an opportunity to cure. And one of the important points on this appeal is, weren't we given the opportunity to cure? And I submit, as I said before, common sense is Mary Works, if he would have said, if you want four paragraphs, we'll give you four paragraphs or six paragraphs. We'll write a page about what a sales associate does. We want this license. We've spent a lot of money applying for this license. Tell us what you want, and we will do it. They did not. They acted arbitrarily and capriciously. They never gave us the opportunity to cure. Counsel, counsel, now I'm reading from the June 1 request that the department sent Mary Works. And it says that there are, there's missing information identified, and it specifically indicates applicants organizational chart must include, sorry, You received that, and you actually responded by providing descriptions for some of the organization chart positions, but not all. You were given an opportunity to amend the application to address the deficiency, but it wasn't complete. Why is the department not entitled to disqualify you based upon that noncompliance? You said you didn't get an opportunity, but you were given a very specific opportunity. So as we went through our 70-page supplement, I believe it was 70 pages. It might have been 60 pages. We did the best we could to cure the deficiency. When reading the regulation that uses, you know, there was some discussion in the brief about the last kind of seating rule, et cetera. My client, the applicant, when she read the need for full position descriptions, read it in the context of the words for filled positions. This court might agree, might disagree with how she read the rule, but that's a reasonable reading of the rule. So she thought by supplying detailed position descriptions for all filled positions, she met the requirement. The department disagrees. People disagree all the time. The point is, just say to us, fill out these other six paragraphs. We've done it for the filled positions. We would have done it for the unfilled positions. Just give us that opportunity, especially upon the remand, after you were told the first time that the first time you listed these six positions was in the court hearing, was not in the administrative hearing. So when it goes back to the administrative hearing, they have the opportunity to say, write these six paragraphs. We would have written those six paragraphs. We would have had our license, and we wouldn't be here today. Thank you for your time. Thank you for your patience. Questions? Justice Fannin? No, thank you. Okay, well, thank you, counsel, both, for your arguments in this matter this morning. It will be taken under advisement, and the written disposition shall issue.